[No. 13582. Department Two. January 24, 1917.]

EMIL ZECH, *Respondent*, v. WILLIAM H. BELL, *as Bell Decorating Company, et al., Appellants.*[1]

JOINT ADVENTURES—NATURE—"NET PROFITS"—UNEQUAL CONTRIBUTION. An agreement to share equally the "net profits" on a contract for finishing, painting, and decorating a building, constitutes a joint adventure and not a partnership, requiring an equal division of property without regard to any inequality in contribution or interest on money advanced.

SAME—"NET PROFITS"—OVERHEAD EXPENSE—CUSTOM—EVIDENCE. Under an agreement to share the "net profits" of a contract for finishing, painting, and decorating a building, "overhead" expense cannot be allowed on the testimony by one party that it "customarily" amounted to eighteen per cent in his business, in the absence of evidence that there was a general or trade custom to that effect, or that the other party was informed of such overhead expense at the time of making the contract of joint adventure.

SAME—CONTRACT—BALANCE—EVIDENCE—SUFFICIENCY. That a profit-sharing contract was made and a balance due to plaintiff appears from admissions of the defendant in a letter referring to the probable net profits, stating the sum plaintiff had had in salary and profits, and to the effect that defendant would soon compute and pay the balance due him.

Appeal from a judgment of the superior court for King county, Ronald, J., entered October 14, 1915, in favor of the plaintiff, upon findings of the court and the report of a referee, in an action for an accounting. Affirmed.

*John W. Roberts* and *George L. Spirk*, for appellants.

*George L. Palmer* and *Beechler & Batchelor*, for respondent.

[1]Reported in 162 Pac. 363.

HOLCOMB, J.—Respondent had judgment upon a second cause of action for an accounting and balance in his favor against appellants in the sum of $729.80, the matter involved in the first cause of action not being in controversy here. The substance of the allegations of the complaint upon which the accounting and judgment were demanded is that, on about April 10, 1914, the defendant William H. Bell entered into an oral contract with respondent by the terms of which it was mutually agreed that, in consideration of the services and labor of respondent to be performed upon the work of finishing, painting, frescoing and decorating a certain building in the city of Seattle known as the L. C. Smith forty-two story building, for which work the defendant Bell had the contract with the general contractors of the building, the net profits, to be received upon such work or job after ascertaining the same by deducting the necessary and actual expenses of the work from the contract price to be received by the defendant, were to be equally divided between them; that thereupon, defendant Bell having secured the work and contract from the general contractors, respondent, in compliance with the terms of the oral agreement, entered upon the work of decorating the building, and continued to devote his entire time and attention thereto until the same was completed and accepted by the general contractors, architects, and owner of the building; that, during the continuance of the work, the defendant William H. Bell kept, and at the time of the commencement of suit had, all the books, papers and memoranda relating to the work and job, and that he collected all sums due thereon for the work, the respondent drawing and receiving only a small sum per week out of the moneys so due, known as the drawing account, upon the profits due the respondent; that the defendant Bell collected and appropriated to his own use, outside of the expenses of the job, and except the sum of $390 drawn in weekly payments by respondent, and except the further sum of $700 paid to the respondent, the entire sum due from the general

contractors on the building; that the respondent, by reason of the fact that defendant Bell had in his possession the books and accounts and refused to render a statement thereof, was unable to furnish a complete statement of the profits upon the job and the exact amount due to respondent under his agreement, but alleged that the net profits upon the job amounted to at least the sum of $3,550, and that there was at least the sum of $900 due respondent as his share of the net profits; that the true amount due respondent could be ascertained only by a complete accounting between the parties; that the plaintiff had demanded of the defendants a complete accounting, which the defendants at all times refused. Judgment was prayed accordingly.

Upon issues being joined by answer to the complaint and reply to the affirmative answers, a partial trial was had, the court entering upon the trial of the matter to determine the question of whether or not the parties sustained such relations and such conditions existed as required an accounting. Evidence upon that question was received and the court, determining that such relations existed and that an accounting was necessary, ordered a reference and appointed a referee, and the referee thereupon qualified and proceeded to receive evidence upon the accounting. On the conclusion of the evidence, the referee made his report and findings of fact and conclusions of law in writing and filed the same, and the court entered judgment thereon.

By his report and findings, the referee found that the total receipts received by Bell under his contract on the Smith building were $12,230; that he expended the following sums on the contract: Materials, $3,203.06; labor, $5,195.68; miscellaneous expenditures, $191.63; interest paid on loans, $43.56; making a total of $8,633.93, expenses. The referee further found that there was chargeable against the receipts for the work on the Smith building, in case the court held that a partnership agreement existed between respondent and Bell, eighteen per cent of the cost of doing the work, or $1,546.20,

which item is generally spoken of in business matters and accounting as "overhead," and that if a partnership agreement existed between respondent and Bell, the respondent has been overpaid in the sum of $65.10; that if the agreement was one of joint adventure, then the overhead expenses could not be allowed, and that Bell would then be indebted to respondent in the sum of $729.80. Upon this report and after further argument, the court found that the transaction between these parties constituted a joint adventure and not a general partnership, and that Bell was not entitled to deduct eighteen per cent overhead, nor $43.56 interest, and that respondent was entitled to a balance of $729.80.

Appellants excepted to the report of the referee, to all portions of the report referring to a joint adventure, and to the holding of the court that overhead expenses and interest were not allowable if the arrangement was a joint adventure, and that it was a joint venture. Motions for judgment notwithstanding the decision of the court and for new trial were unsuccessfully made by appellants and each of them.

Upon this appeal much time is devoted to a discussion of the question of whether the arrangement between the parties was a partnership or a joint adventure, and it is contended by appellants that the respondent based his second cause of action upon a partnership; that the court determined the matter, at the time the reference was ordered and the referee appointed, upon the theory of a partnership, and thus prejudiced the rights of the appellants.

It seems to us that brief consideration need be given to this question. We cannot see how appellants were prejudiced upon that matter, although both the trial judge and respondent loosely and in common parlance alluded to the parties as "partners," and to a "partnership," since the complaint, as to the second cause of action, clearly alleged only a profit-sharing venture in a single transaction—the contract for the finishing, painting, frescoing and decorating of the L. C. Smith building—and the proofs sustained that contract as

alleged.    A joint adventure is an enterprise undertaken by several persons jointly.    23 Cyc. 452.

"One distinction [between a partnership and a joint adventure] lies in the fact that while a partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure relates to a single transaction, although the latter may comprehend a business to be continued for a period of years. . . .    The principal distinction, however, is that in most jurisdictions where any [distinction] is regarded as existing, one party may sue the other at law for a breach of the contract or a share of the profits or losses, or a contribution for advances made in excess of his share; but this right will not preclude a suit in equity for an accounting."    23 Cyc. 453.

As to the rights of the party contributing the capital, he

"is entitled to reimbursement for all expenses. . . .    But he cannot charge against the fund any part of the expenses of negotiating a loan to be used in the adventure, or interest on such loan, or on advances made by him."    23 Cyc. 457.

As to joint adventures,

"In the absence of express agreement the law implies an equal division of profits, without regard to any inequality of contribution."    23 Cyc. 459.

Appellants admit that the ascertaining of the net profits even in a joint adventure contract is not, under such contract as the respondent here claimed, any different from ascertaining the net profits in a partnership, because the term "net profits" has a well defined meaning whether it be in a partnership or in a joint adventure; that the oral contract claimed by the respondent was no different as to ascertainment of the net profits from any partnership, and it is argued from that assumption that the overhead expense, which they claimed was eighteen per cent, should in any event be allowed and deducted.    The contest here thus revolves principally upon the question of what are in fact the net profits of the adventure.    The appellant Bell contended and testified that his overhead expense in performing such

a contract as he had upon the Smith building customarily amounted to eighteen per cent. But his testimony that it customarily amounted in his business to a certain percentage does not establish a general custom to that effect, nor a particular custom of that trade, and without proof of a general trade custom or, in the absence of that, of a private business custom brought to the knowledge of the other party to the joint adventure, it could not be sustained as a just allowance. There was no evidence that it was a general trade custom or a particular custom of this particular trade. Nor was there any evidence to the effect that, at the making of the contract of joint adventure, respondent was informed that the usual overhead expense of carrying such contract was eighteen per cent or any other per cent. The evidence in fact is, as shown by the record, that the overhead expense varies and appellants kept no account of what particular expenses, which are commonly included in and designated as overhead expenses, occurred in the carrying on of this particular contract. If appellants should now be permitted to charge against this joint adventure a proportionate share of such expenses in doing their entire general business, they could charge respondent with much more than his proportionate share on this particular transaction. *Bane v. Dow*, 80 Wash. 631, 142 Pac. 23. Manifestly they should have shown exactly what that proportionate share was, or the particular items of business expense which entered into and became a part of this particular contract. 30 Cyc. 742. This they failed to do.

As to the question generally, whether it was a profit-sharing contract, and as to whether anything was due under it to respondent, appellant Bell clearly concluded the matter by his letter to respondent of September 29, 1914, wherein, among other things, he said that, although he did not have all the accounts footed up accurately, he had roughly computed the probable net profits without extra work done on the partitions, and that the figures totaled approximately

$3,100; that respondent had had in salary and profits on that job $1,090, and this amount with some moneys collected on other work by respondent would bring what respondent had received close up to the amount due him; that there was, however, something due him, and that he would clean it all up just as soon as he could get that work off his hands. There was testimony also of other admissions, and there could be no finding other than that it was a profit-sharing contract, that there was a balance due respondent, and that the balance due was correctly arrived at by the referee and by the court. After a careful examination of the record, we are of the opinion that no other result could have been arrived at than the judgment entered by the lower court.

The motions for judgment notwithstanding the decision and for a new trial were without merit and were properly denied. There is no error in the record, and the judgment is affirmed.

MORRIS, MOUNT, FULLERTON, and PARKER, JJ., concur.