## 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

### HILL v. POSTLEY.

#### JULY 20th, 1893.

PARTNERS—*Powers—General Assignment.*—It is settled law that one partner has no implied authority to make a general assignment of the partnership effects for the benefit of creditors, unless his co-partner is absent or incapable of giving his assent or dissent.

2. WITNESSES—*Objection to competency.*—Objection to competency of witness, *held,* not necessarily waived unless made before examination in chief. *Warwick* v. *Warwick,* 31 Gratt., 70.

3. IDEM—*Case at bar.*—Defendant does not become a competent witness in an action on a note given plaintiff for an antecedent debt, wherein the latter is incompetent, because of the fact that the note was given at the instance and in the presence of plaintiff's agent, who has testified in the case, the contract having been made with plaintiff and not with agent.

4. CONSOLIDATION OF CAUSES is a matter of discretion with the court below, and will not be disturbed, unless there was an abuse of discretion.

Appeal from decree of corporation court of Bristol, rendered September 21, 1892, in a suit in equity wherein Fannie C. Postley, suing by her next friend, W. W. Davis, was complainant, and A. M. Postley and F. M. Hill, partners trading under the firm name and style of A. M. Postley & Co., were defendants. The case is sufficiently stated in the opinion.

*Blanchard & Ashworth,* for appellant.

*Fulkerson, Page & Hurt* and *H. G. Peters,* for appellee.

LEWIS, P., delivered the opinion of the court.

On the first of April, 1891, A. M. Postley and F. M. Hill, residing in Bristol, Tenn., entered into a co-partnership to conduct the grocery business in Bristol, Virginia. By the articles of co-partnership, Postley agreed to contribute $2,000 in cash as the capital with which to commence the business. This sum was contributed; but the appellee, Mrs. Postley, the wife of A. M. Postley, who was the plaintiff below, contends that it was advanced or loaned by her to the firm; that the firm recognized its indebtedness to her; and that on the 18th day of August, 1891, she obtained from the firm its note for $2,000, payable to her one day after the date of the note. This note was executed by Hill for the firm, and in the body of the note it is recited that the money for which it was given was the separate estate of Mrs. Postley, and that the same went into the purchase of the stock of goods then on hand.

On the 21st of April, 1892, the note being due and unpaid, Mrs. Postley instituted the present suit, and sued out an attachment, which was, on the same day, levied on the partnership effects; and there was an order of publication against the members of the firm, both of whom were non-residents. A few minutes, however, before the levy of the attachment, a general assignment of all the personal effects of the firm by Hill, for the benefit of creditors, was filed for recordation in the clerk's office; and the principal question in the case is, whether or not this assignment is valid. If it be valid, the attachment was improperly levied, and ought to have been abated. If, on the other hand, it be void, then there was no error in overruling the motion to abate the attachment, and the decree in favor of the plaintiff must be affirmed.

The validity of the assignment is sought to be maintained on the ground that, for several months prior to its execution, A. M. Postley, was mentally and physically incapable of attending to the business, or of aiding therein in any way, and that the entire care and responsibility of conducting it was consequently left to Hill. But of this there is no proof, save Hill's

deposition, and that was excluded by the court below as incompetent evidence.

It is settled law that one partner has no implied authority to make a general assignment of the effects of the partnership, unless his co-partner is absent so that he cannot be consulted, or is incapable of giving his assent or dissent. Such an assignment is a virtual dissolution of the partnership; it supersedes all the business of the firm, as such, and takes from the control of each partner all the property with which the business is conducted; nor do the purposes of the business require that such a power should be implied.

In *Anderson* v. *Tompkins*, 1 Brock., 456, a general assignment by one partner for the benefit of creditors was sustained by Chief Justice Marshall; but the case was decided on the ground that the other partner had left the country, and had presumably confided everything which respected their joint business to the partner by whom the assignment was made, and who, therefore, was under the necessity of acting alone.

This case was cited with approval in *M' Cullough* v. *Sommerville*, 8 Leigh, 415, in which case Judge Carr said: "Following this high authority, I conclude that a partner has a right to convey the social effects (save real estate) to trustees, to pay specified creditors of the firm, and this without the assent of his co-partner, where (as here) that co-partner resides out of the State, and the grantor is sole manager of the concern." The same principle was recognized in *Gordon* v. *Cannon*, 18 Gratt., 387. But in no case, of which we are aware, has the general rule, above stated, been impugned.

In the notes to *Livingston* v. *Roosevelt*, 1 Am. Lead. Cas. (at p. 447), the annotators say: "Thus far there is no American case which says that one partner, when the other members are present, may, without their consent, make a general assignment of the firm effects to a trustee for the benefit of creditors."

See, also, Coll. on Part., sec. 395; Story on Part. (6th ed.), sec. 101, and cases cited in the notes.

In the present case it is not pretended that the assignment in question was made with the assent of Postley, though he and the grantor resided in the same town; and in his answer he says it was made without his knowledge or consent, and against his will. It is contended, however, that he was mentally incapable of assenting; but this contention rests altogether on Hill's answer and deposition, and the latter was rightly excluded by the lower court as incompetent evidence, on the ground that Mrs. Postley, the plaintiff, was not competent to testify. The evidence, indeed, for the plaintiff shows that in August, 1891, when the note was executed, Postley was seriously ill; but for aught that appears from the record, independently of Hill's deposition, he had been fully restored to mental and physical vigor in April, 1892, when the alleged assignment was made.

It is true no objection to Hill's competency as a witness was taken before his examination in chief; but objection was made before the cross-examination was commenced, and there is nothing to warrant the inference that the objection was delayed for the purpose of obtaining any unfair advantage. In *Hord's Adm'r* v. *Colbert*, 28 Gratt. 49, it was held that an objection to the competency of the witness after he had been cross-examined at length upon all the issues involved, came too late. But it has never been decided in this State that objection to the competency of a witness is necessarily waived, unless made before the examination in chief. On the contrary, in *Warwick* v. *Warwick*, 31 Gratt. 70, there was no objection until after the examination in chief had commenced, and it was held that this was not a waiver of the right to object. The general rule undoubtedly is that objection to the competency of a witness ought to be taken before the witness is examined in chief; but the rule is not inflexible. Each case must be determined on its own circumstances; and if there was no waiver in *Warwick* v. *Warwick*, there are no circumstances requiring a different ruling in the present case.

The point made by the appellant, that Hill was a competent

witness, under the statute, because the note was executed at the instance, and in the presence, of Thomas, the brother and alleged agent of Mrs. Postley, who was competent to testify, and did testify, in the case, is not well taken. The contract was not made with Thomas, but with Mrs. Postley, the consideration for the note being the previous indebtedness of the firm to her; and besides, the note and the subsequent assignment are entirely separate and distinct transactions.

This being so, there is no evidence to bring the assignment within any exception to the general rule above stated; and the assignment being, therefore, void, and not merely voidable, it constituted no impediment to the levy of the plaintiff's attachment on the property embraced in it. *Loeb* v. *Pierpoint*, 58 Iowa, 469; 43 Am. Rep., 122.

It was contended in the argument that the plaintiff *gave* to her husband the money for which the note was executed, and that the firm was in no way liable to her for it. If this be true, then Hill, in executing the note, perpetrated a fraud on "the honest creditors" of the firm for whose interests he now professes great concern. But the contention is negatived, not only by the recitals in the note, but by the evidence of Thomas as to what occurred between Hill and himself when the note was signed. According to this witness, Hill remarked when he signed the note that the money was Mrs. Postley's, and had been used in buying the stock of goods, and that she ought to be protected. The same witness also says Hill admitted the firm's liability to her for the money, and that he willingly signed the note.

Another ground of error is the refusal of the lower court to consolidate the present suit with several other suits pending in the same court to set aside the assignment on the ground of fraud. This, however, was a matter in the discretion of the court, which does not appear from the record to have been injudiciously exercised. *Patterson* v. *Eakin*, 87 Va., 49.

DECREE AFFIRMED.